IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEVEN LEE BRUCE,                        6:12-CV-00853-BR

       Plaintiff,                        OPINION AND ORDER

v.

CAROLYN W. COLVIN,
Commissioner, Social Security
Administration,[1]

       Defendant.


STEVEN LEE BRUCE
1810 Pierce Street
Eugene, OR 97405
(541) 525-7158

       Plaintiff, *Pro Se*

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this case.  No further action need be taken to continue this case by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405.

1 - OPINION AND ORDER

**S. AMANDA MARSHALL**
United States Attorney
**ADRIAN L. BROWN**
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

**DAVID MORADO**
Regional Chief Counsel
**ERIN F. HIGHLAND**
Special Assistant United States Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104
(206) 615-2531

       Attorneys for Defendant

**BROWN, Judge.**

    Plaintiff Steven Lee Bruce seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which she denied Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act.  This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

    For the reasons that follow, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

## ADMINISTRATIVE HISTORY

    Plaintiff filed an application for DIB on September 21, 2006, alleging a disability onset date of December 15, 1999.

Tr. 116-20.[2]  The application was denied initially and on
reconsideration.  An Administrative Law Judge (ALJ) held a
hearing on January 13, 2009.  Tr. 41-78.  At the hearing
Plaintiff was represented by an attorney.  Plaintiff and a
vocational expert (VE) testified.

The ALJ issued a decision on March 18, 2009, in which he
found Plaintiff was not disabled before his September 30, 2006,
date last insured and, therefore, is not entitled to benefits.
Tr. 29-40.  Pursuant to 20 C.F.R. § 404.984(d), that decision
became the final decision of the Commissioner on November 8,
2010, when the Appeals Council denied Plaintiff's request for
review.


## BACKGROUND

Plaintiff was born November 21, 1965, and was 43 years old
at the time of the hearing.  Tr. 116.  Plaintiff completed high
school.  Tr. 39.  Plaintiff does not have any past relevant work
experience.  Tr. 39, 154.

Plaintiff alleges disability due to back, neck, leg, and
hand pain, and post-traumatic stress disorder (PTSD).  Tr. 150.

Except when noted, Plaintiff does not challenge the ALJ's
summary of the medical evidence.  After carefully reviewing the

---

[2] Citations to the official transcript of record filed by
the Commissioner on August 20, 2013, are referred to as "Tr."

medical records, this Court adopts the ALJ's summary of the

medical evidence.  *See* Tr. 32, 35-38.

## STANDARDS

The initial burden of proof rests on the claimant to

establish disability.  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th

Cir. 2012).  To meet this burden, a claimant must demonstrate his

inability "to engage in any substantial gainful activity by

reason of any medically determinable physical or mental

impairment which . . . has lasted or can be expected to last for

a continuous period of not less than 12 months."  42 U.S.C.

§ 423(d)(1)(A).  The ALJ must develop the record when there is

ambiguous evidence or when the record is inadequate to allow for

proper evaluation of the evidence.  *McLeod v. Astrue*, 640 F.3d

881, 885 (9th Cir. 2011)(quoting *Mayes v. Massanari,* 276 F.3d

453, 459-60 (9th Cir. 2001)).

The district court must affirm the Commissioner's decision

if it is based on proper legal standards and the findings are

supported by substantial evidence in the record as a whole.  42

U.S.C. § 405(g).  *See also Brewes v. Comm'r of Soc. Sec. Admin.*,

682 F.3d 1157, 1161 (9th Cir. 2012).  Substantial evidence is

"relevant evidence that a reasonable mind might accept as

adequate to support a conclusion."  *Molina*, 674 F.3d. at 1110-11

(quoting *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690

(9th Cir. 2009)).  "It is more than a mere scintilla [of evidence] but less than a preponderance."  *Id.* (citing *Valentine*, 574 F.3d at 690).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).  Even when the evidence is susceptible to more than one rational interpretation, the court must uphold the Commissioner's findings if they are supported by inferences reasonably drawn from the record.  *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The court may not substitute its judgment for that of the Commissioner.  *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### I.   The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).  *See also* 20 C.F.R. § 404.1520.  Each step is potentially dispositive.

5 – OPINION AND ORDER

At Step One the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(I).  *See also Keyser v. Comm'r of Soc. Sec.*, 648 F.3d 721, 724 (9th Cir. 2011).

At Step Two the claimant is not disabled if the Commissioner determines the claimant does not have any medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii).  *See also Keyser*, 648 F.3d at 724.

At Step Three the claimant is disabled if the Commissioner determines the claimant's impairments meet or equal one of the listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  *See also Keyser*, 648 F.3d at 724.  The criteria for the listed impairments, known as Listings, are enumerated in 20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, she must assess the claimant's residual functional capacity (RFC).  The claimant's RFC is an assessment of the sustained, work-related physical and mental activities the claimant can still do on a regular and continuing basis despite his limitations.  20 C.F.R. § 404.1520(e).  *See also* Social Security Ruling (SSR) 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent schedule."  SSR 96-8p, at *1.  In other

words, the Social Security Act does not require complete
incapacity to be disabled. *Taylor v. Comm'r of Soc. Sec. Admin.,*
659 F.3d 1228, 1234-35 (9th Cir. 2011)(citing *Fair v. Bowen,* 885
F.2d 597, 603 (9th Cir. 1989)).

At Step Four the claimant is not disabled if the
Commissioner determines the claimant retains the RFC to perform
work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv).
*See also Keyser,* 648 F.3d at 724.

If the Commissioner reaches Step Five, she must determine
whether the claimant is able to do any other work that exists in
the national economy. 20 C.F.R. § 404.1520(a)(4)(v). *See also
Keyser,* 648 F.3d at 724-25. Here the burden shifts to the
Commissioner to show a significant number of jobs exist in the
national economy that the claimant can perform. *Lockwood v.
Comm'r Soc. Sec. Admin.,* 616 F.3d 1068, 1071 (9th Cir. 2010).
The Commissioner may satisfy this burden through the testimony of
a VE or by reference to the Medical-Vocational Guidelines set
forth in the regulations at 20 C.F.R. part 404, subpart P,
appendix 2. If the Commissioner meets this burden, the claimant
is not disabled. 20 C.F.R. § 404.1520(g)(1).


## ALJ'S FINDINGS

At Step One the ALJ found Plaintiff had not engaged in
substantial gainful activity from his December 15, 1999, alleged

onset date through his September 30, 2006, date last insured.
Tr. 31.

At Step Two the ALJ found Plaintiff, before his date last
insured, had the severe impairments of degenerative disc disease
of the lumbar spine, depressive disorder not otherwise specified,
and an anxiety disorder.  Tr. 31.  The ALJ found Plaintiff's
impairment of pain in his neck, back, legs, and hands was not
severe before Plaintiff's date last insured.  Tr. 31.  The ALJ
found Plaintiff did not suffer from PTSD.  Tr. 32.

At Step Three the ALJ concluded Plaintiff's medically
determinable impairments did not meet or medically equal one of
the listed impairments in 20 C.F.R. part 404, subpart P,
appendix 1, before his September 30, 2006, date last insured.
Tr. 32.  The ALJ found Plaintiff had the RFC to perform light
work through his date last insured.

> Specifically [Plaintiff] was capable of lifting
> and/or carrying 20 pounds occasionally and 10
> pounds frequently, standing and/or walking 6 of
> hours [sic], and sitting 6 of 8 hours.  Further
> [Plaintiff] was capable of frequent balance, and
> occasionally climbing of ramps/stairs, as well as,
> occasionally, stooping, kneeling, crouching, and
> crawling.  As to mental residual functional
> capacity, [Plaintiff] was capable of performing
> simple tasks with occasional public contact.

Tr. 34.

At Step Four the ALJ found Plaintiff did not have any past
relevant work.  Tr. 39.

At Step Five the ALJ found Plaintiff could perform jobs that

exist in significant numbers in the national economy before his date last insured. Tr. 39. Accordingly, the ALJ found Plaintiff was not disabled before his September 30, 2006, date last insured.

## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to fully develop the record; (2) failing to find all of Plaintiff's impairments to be severe at Step Two; (3) improperly finding at Step Three that Plaintiff's impairments did not meet or equal a listed impairment; (4) improperly rejecting Plaintiff's testimony; and (5) improperly rejecting the opinions of Rex Turner, Ph.D., treating psychologist; Jason Quiring, Ph.D., examining psychologist; Thomas Harrison, a consultant with the Veterans Administration (VA); and William Lussier, examining physician's assistant.

## I.    The ALJ did not fail to fully develop the record.

Plaintiff asserts the ALJ erred by failing to fully develop the record. Specifically, Plaintiff contends the ALJ did not obtain all of Plaintiff's records from Sacred Heart Medical Center or the Veterans Administration.

The Social Security Regulations require the Commissioner to develop a claimant's medical record as follows: "Before we make a determination that you are not disabled, we will develop your

complete medical history for at least the 12 months preceding the
month in which you file your application." 20 C.F.R.
§ 404.1512(d). Here the record reflects the Commissioner
contacted each medical source identified by Plaintiff in his
application and requested Plaintiff's medical records. Moreover,
Plaintiff submitted additional records from the VA to the Appeals
Council, and those records were considered during the review
process. Finally, Plaintiff was represented by an attorney at
the administrative level, and counsel did not assert there were
records missing or that additional records could provide more
information as to Plaintiff's condition before his September 30,
2006, date last insured.

On this record the Court concludes the ALJ did not fail to
fully develop the record.

## II. The alleged error by the ALJ at Step Two was harmless.

Plaintiff contends the ALJ erred by failing to find at Step
Two that Plaintiff suffered from PTSD and bipolar disorder.

As noted, at Step Two the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments. *Stout v.
Commissioner*, 454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20
C.F.R. § 404.1520(a)(4)(ii). A severe impairment "significantly
limits" a claimant's "physical or mental ability to do basic work
activities." 20 C.F.R. § 404.1521(a). *See also Ukolov*, 420 F.3d

at 1003.   The ability to do basic work activities is defined as
"the abilities and aptitudes necessary to do most jobs."   20
C.F.R. §§ 404.1521(a), (b).   Such abilities and aptitudes include
walking, standing, sitting, lifting, pushing, pulling, reaching,
carrying, handling, seeing, hearing, speaking; understanding,
carrying out, and remembering simple instructions; using
judgment; responding appropriately to supervision, co-workers,
and usual work situations; and dealing with changes in a routine
work setting.   *Id.*

The Step Two threshold is low:

> [A]n impairment can be considered as not severe
> only if it is a slight abnormality which has such
> a minimal effect on the individual that it would
> not be expected to interfere with the individual's
> ability to work . . . .   [T]he severity regulation
> is to do no more than allow the Secretary to deny
> benefits summarily to those applicants with
> impairments of a minimal nature which could never
> prevent a person from working.

SSR 85-28, at *2 (Nov. 30, 1984)(internal quotations omitted).

The record reflects even though Plaintiff was diagnosed with
PTSD in 2002, Dr. Turner noted in 2004 that "the Mississippi
Combat Scale as a psychological test was not designed to measure
non-combat caused PTSD, and represents a dubious choice among
psychological tests for that purpose."   Tr. 386.   After
administering a number of psychological tests, Dr. Turner
concluded Plaintiff did not have PTSD.   Tr. 388.   In addition,
there is not any evidence in this record that any medical source

11 - OPINION AND ORDER

diagnosed Plaintiff with bipolar disorder.  The Ninth Circuit has held a diagnosis from an acceptable medical source is a prerequisite to a finding that a medically determinable impairment exists and symptoms by themselves are not sufficient to establish such an impairment.  *Ukolov v. Barnhart*, 420 F.2d 1002, 1005-06 (9th Cir. 2005).

Finally, the Ninth Circuit has held when the ALJ has resolved Step Two in a claimant's favor, any error in designating specific impairments as severe does not prejudice a claimant at Step Two.  *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (any error in omitting an impairment from the severe impairments identified at Step Two was harmless when Step Two was resolved in claimant's favor).

Because the ALJ resolved Step Two in Plaintiff's favor, the Court concludes any error by the ALJ in failing to identify PTSD or bipolar disorder as a severe impairment is harmless.

**III. The ALJ did not err at Step Three.**

Plaintiff contends the ALJ erred at Step Three by finding that Plaintiff failed to meet Listings 1.04(A), 1.04(C), and 12.02.

**A.   Listings 1.04(A) and (C)**

To meet Listings 1.04(A) and (C) Plaintiff must establish he has a

> [d]isorder[] of the spine (*e.g.*, herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis,

osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

A.   Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

* * *

C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P., app. 1, § 1.04.

Listing 1.04 requires compromise of a nerve root or the spinal cord.  The record, however, does not reflect Plaintiff has a compromised nerve root or spinal cord.  The record also does not reflect Plaintiff has nerve-root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, or motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss.  The record, however, reflects Plaintiff has mild foraminal stenosis, "no significant central canal or lateral recess stenosis," and "minimal degenerative disc disease."  Tr. 637-38.

In addition, the record does not reflect Plaintiff is

unable "to ambulate effectively as defined in Listing 1.00B2b.

Listing 1.00B2b provides:

> (1)  Definition.  Inability to ambulate
> effectively means an extreme limitation of the
> ability to walk; *i.e.*, an impairment(s) that
> interferes very seriously with the individual's
> ability to independently initiate, sustain, or
> complete activities.  Ineffective ambulation is
> defined generally as having insufficient lower
> extremity functioning . . . to permit independent
> ambulation without the use of a hand-held
> assistive device(s) that limits the functioning of
> both upper extremities.
>
> *   *   *
>
> (2)  To ambulate effectively, individuals must be
> capable of sustaining a reasonable walking pace
> over a sufficient distance to be able to carry out
> activities of daily living.  They must have the
> ability to travel without companion assistance to
> and from a place of employment or school.
> Therefore, examples of ineffective ambulation
> include, but are not limited to, the inability to
> walk without the use of a walker, two crutches or
> two canes, the inability to walk a block at a
> reasonable pace on rough or uneven surfaces, the
> inability to use standard public transportation,
> the inability to carry out routine ambulatory
> activities, such as shopping and banking, and the
> inability to climb a few steps at a reasonable
> pace with the use of a single hand rail.  The
> ability to walk independently about one's home
> without the use of assistive devices does not, in
> and of itself, constitute effective ambulation.

The record reflects Plaintiff uses a single cane to

ambulate (which was not prescribed by any medical professional).

As noted, however, § 1.00B2b defined the "inability to ambulate"

as requiring two canes to walk.  In addition, Plaintiff reported

he was "able to attend to all [activities of daily living]."

14 - OPINION AND ORDER

Tr. 593.  The record also contains references to several
instances in which treatment providers noted Plaintiff's gait was
stable and he did not have difficulty ambulating.  Tr. 512, 536.

On this record the Court concludes the ALJ did not err
when he found Plaintiff did not have an impairment or combination
of impairments that met Listings 1.04(A) or (C) before his
September 30, 2006, date last insured.

**B.    Listing 12.02**

Although he does not cite Listing 12.02 specifically,
Plaintiff appears to contend the ALJ erred when he found
Plaintiff did not meet this Listing for Organic Mental Disorders.
To meet Listing 12.02 Plaintiff must establish "the requirements
in both A and B are satisfied, or when the requirements in C are
satisfied."  Plaintiff asserts he meets Listing 12.02(A)(6),
which requires "[e]motional lability (*e.g.,* explosive temper
outbursts, sudden crying, etc.) and impairment in impulse
control."  The record, however, reflects Plaintiff's health-care
providers found Plaintiff's impulse control to be intact.
Tr. 381, 664, 726.  In addition, Plaintiff does not assert and
the record does not reflect any health-care provider found
Plaintiff suffers from any of the B or C criteria.

On this record the Court concludes the ALJ did not err
when he found Plaintiff did not have an impairment or combination
of impairments that satisfied Listing 12.02 before his September

30, 2006, date last insured.  Accordingly, the Court concludes

the ALJ did not err at Step Three when he found Plaintiff's

medically determinable impairments did not meet or medically

equal one of the listed impairments in 20 C.F.R. part 404,

subpart P,

appendix 1, before his September 30, 2006, date last insured.

## IV.  The ALJ provided clear and convincing reasons for partially rejecting Plaintiff's testimony.

Plaintiff alleges the ALJ erred by failing to provide clear

and convincing reasons for partially rejecting Plaintiff's

testimony.

In *Cotton v. Bowen* the Ninth Circuit established two

requirements for a claimant to present credible symptom

testimony:  The claimant must produce objective medical evidence

of an impairment or impairments, and he must show the impairment

or combination of impairments could reasonably be expected to

produce some degree of symptom.  *Cotton*, 799 F.2d 1403, 1407 (9th

Cir. 1986).  The claimant, however, need not produce objective

medical evidence of the actual symptoms or their severity.

*Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not

any affirmative evidence of malingering, the ALJ can reject the

claimant's pain testimony only if he provides clear and

convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742,

750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th

16 – OPINION AND ORDER

Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id.*  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints."  *Id.* (quoting *Lester*, 81 F.3d at 834).

At the hearing Plaintiff testified he has chronic pain, problems with his nerves, and problems with his spine.  Plaintiff testified he cannot sit in one position for "long periods of time," and he has to continually shift and move.  Tr. 45. Plaintiff stated he cannot sit longer than 15 minutes or he becomes numb from the waist down.  Plaintiff stated he has meralgia paresthetica on the inside of his legs which affects his ability to walk and stand.  Tr. 46.  Plaintiff testified he can only walk three blocks before he has severe leg pain.  Tr. 47. Plaintiff also characterized his mental state as erratic and testified he has a lot of paranoia and anxiety as well as "anger and irritability issues."  Tr. 50-52.

The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of [Plaintiff's] alleged symptoms," but he concluded Plaintiff's testimony "concerning the intensity, persistence, and limiting effects" of his symptoms "are not credible to the extent they are inconsistent with the [RFC]."  Tr. 35.  The ALJ noted MRI studies of Plaintiff's lumbar spine showed only scattered degenerative changes, mild degenerative disc disease, and mild foraminal

stenosis.   He ALJ noted Plaintiff's medical providers primarily
prescribed and/or advised conservative treatments such as
physical therapy, acupuncture, and anti-inflammatories.
Plaintiff's mental-health records show he was on a low dose of
Paxil for a short period of time.

In addition, the ALJ noted Linda Clausen, L.C.S.W., stated
in her treatment notes of March 2004 that "in two years of
counseling [Plaintiff's] gains [have been] minimal at best."
Tr. 669.  L.C.S.W. Clausen stated "the issue of secondary gain
cannot as yet be ruled out as one of the barriers to therapeutic
progress.  He claims to be severely disabled by PTSD, but this
clinician has not observed the degree of disability he claims."
Tr. 669.  On January 30, 2004, examining nurse practitioner
(N.P.) Mical Dutson reported Plaintiff exhibited "almost an over-
exaggerated pain response."  Tr. 689.  N.P. Dutson noted "when
[Plaintiff was] test walking, there was no limp but coming into
the clinic from the waiting room, there was a significant right-
sided limp that appeared to be somewhat exaggerated from exam
findings."  Tr. 689.  Finally N.P. Dutson noted "possibly not
some of the best efforts were elicited to test against strength."
Tr. 689.  Similarly, Dr. Turner noted in his January 2004
examination that Plaintiff reported he was limited by his back
injury and pain as well as socially isolated.  As a result,
Plaintiff reported has engaged in reduced recreational

18 - OPINION AND ORDER

activities.  Tr. 388.  Dr. Turner stated, however, that he had

"conflicting information in that regard."  Tr. 388.

Specifically, Dr. Turner noted:

> I was party to a recent case review meeting
> wherein [Plaintiff's] Social Worker noted seeing
> him at the Country Fair, apparently socializing in
> large crowds and having a good time.  The staff
> psychiatrist noted seeing [Plaintiff] in a park in
> recent months being very physically active, and
> showing few signs of pain or physical limitation.

Tr. 388.

On this record the Court finds the ALJ provided clear and

convincing reasons supported by substantial evidence in the

record for finding Plaintiff's testimony was not entirely

credible as to the intensity, persistence, and limiting effects

of his conditions.  The Court, therefore, concludes the ALJ did

not err when he rejected Plaintiff's testimony in part.

**V.   Opinions of medical and lay sources**

Plaintiff contends the ALJ erred when he rejected the

opinions of Dr. Turner, treating psychologist; Jason Quiring,

examining psychologist; Thomas Harrison, a vocational-

rehabilitation consultant with the VA; and William Lussier,

examining physician's assistant.

**A.   Drs. Turner and Quiring**

An ALJ may reject an examining physician's opinion when

it is inconsistent with the opinions of other treating or

examining physicians if the ALJ makes "findings setting forth

specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9ᵗʰ Cir. 2002)(quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9ᵗʰ Cir. 1989)). When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it. *Thomas*, 278 F.3d at 957. *See also Lester v. Chater*, 81 F.3d 821, 830-32 (9ᵗʰ Cir. 1995).

### 1. Dr. Turner

In January 2004 Dr. Turner assessed Plaintiff with a GAF of 48.[3] The ALJ rejected Dr. Turner's assessment of Plaintiff's GAF on the ground that it was inconsistent with Dr. Turner's treatment reports and the medical record. For example, the ALJ noted Dr. Turner reported Plaintiff's thought processes were clear, his communication was direct, and he had intact memory and speech rate. Tr. 388. In addition, the ALJ noted Dr. Turner appeared to rely on Plaintiff's subjective complaints when assessing Plaintiff's GAF and, at the same time, questioned Plaintiff's credibility. As noted, Dr. Turner

---

[3] The GAF scale is used to report a clinician's judgment of the patient's overall level of functioning on a scale of 1 to 100. A GAF of 41-50 indicates serious symptoms (suicidal ideation, severe obsessional rituals frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., few friends, unable to keep a job). *Diagnostic and Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4ᵗʰ ed. 2000).

reported information from Plaintiff's social worker and a VA
staff psychiatrist that contradicted Plaintiff's self-reported
pain and limitations.

On this record the Court concludes the ALJ did not
err when he rejected Dr. Turner's GAF assessment of Plaintiff
because the ALJ provided legally sufficient reasons supported by
substantial evidence in the record for doing so.

### 2.   Dr. Quiring

In July 2005 Dr. Quiring conducted a psychological
evaluation of Plaintiff connected to Plaintiff's request for an
increase in his VA disability rating.  Dr. Quiring noted
Plaintiff's thought processes were logical; his communication was
normal; he had an average ability to maintain personal hygiene;
and his speech was normal in rate, volume, and tone.  Tr. 488-89.
Dr. Quiring found Plaintiff had a generalized anxiety disorder
and assessed Plaintiff with a GAF of 39.[4]  The ALJ rejected
Dr. Quiring's assessment of Plaintiff's GAF on the grounds that
it was inconsistent with Dr. Quiring's examination, inconsistent
with the medical record, and based on Plaintiff's subjective
complaints that the ALJ had found not were not credible.  Tr. 37.
As noted, the record reflects Dr. Turner and L.C.S.W. Clausen

---

[4] A GAF of 31-40 reflects "[s]ome impairment in reality
testing or communication . . . OR major impairment in several
areas, such as work or school, family relations, judgment,
thinking, or mood)."  *Diagnostic and Statistical Manual of Mental
Disorders IV* (DSM-IV) 32 (4th ed. 2000).

questioned Plaintiff's credibility with respect to the severity
of his mental-health issues, and the ALJ found Plaintiff not
credible with respect to the intensity and limiting effects of
his impairments.

On this record the Court concludes the ALJ did not err
when he rejected Dr. Quiring's GAF assessment of Plaintiff
because the ALJ provided legally sufficient reasons supported by
substantial evidence in the record for doing so.

### B.    William Lussier

Medical sources are divided into two categories:
"acceptable" and "not acceptable." 20 C.F.R. § 416.902. Medical
sources classified as "not acceptable" include, but are not
limited to, nurse practitioners, therapists, licensed clinical
social workers, and chiropractors. SSR 06-03p, at *2. Factors
the ALJ should consider when determining the weight to give an
opinion from those sources include the length of time the source
has known the claimant and the number of times and frequency that
the source has seen the claimant, the consistency of the source's
opinion with other evidence in the record, the relevance of the
source's opinion, the quality of the source's explanation of his
opinion, and the source's training and expertise. SSR 06-03p, at
*4. On the basis of the particular facts and the above factors,
the ALJ may assign a not-acceptable medical source either greater
or lesser weight than that of an acceptable medical source. SSR

06-03p, at *5-6.  The ALJ, however, must explain the weight

assigned to such sources to the extent that a claimant or

subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p,

at *6.

On June 29, 2005, Lussier, a physician's assistant

(P.A.), examined Plaintiff in connection with Plaintiff's request

for an increase in his disability rating by the VA.  P.A. Lussier

noted Plaintiff "demonstrate[d] remarkable tenderness to

palpation" in his lumbar region.  Tr. 377.  P.A. Lussier then

evaluated Plaintiff's range of motion.  During that evaluation

Plaintiff "suddenly collapsed across the examination table

complaining of severe painful spasms in his right paravertebral

region of the upper lumbar."  Tr. 377.  P.A. Lussier noted "no

palpable spasm appreciated by the examiner in this region," but

Plaintiff could not participate in the range of motion

measurements after that point due to "a reported persistence of

severe pain."  Tr. 377.  P.A. Lussier was, therefore, limited in

his physical examination of Plaintiff and relied on Plaintiff's

medical records and self-reports of pain.  P.A. Lussier concluded

Plaintiff's "state of low back pain with marked limitations in

range of motion capabilities" rendered Plaintiff unemployable.

Tr. 378.

The ALJ gave "little weight" to P.A. Lussier's opinion

on the ground that it was based in large part on Plaintiff's

self-reported symptoms, which, as noted, the ALJ found not credible.  The ALJ also noted P.A. Lussier's opinion was not supported by other evidence in the record such as the results of Plaintiff's MRI scans and Plaintiff's ability to conduct all of his activities of daily living.

On this record the Court concludes the ALJ did not err when he rejected P.A. Lussier's opinion because the ALJ provided legally sufficient reasons supported by substantial evidence in the record for doing so.

**C.   Thomas Harrison**

Plaintiff contends the ALJ erred when he rejected the opinion of Thomas Harrison, a vocational-rehabilitation consultant with the VA.  Harrison's credentials are not set out in the record, and, therefore, the Court assumes he is not a medical source.  Accordingly, the Court evaluates Harrison's opinion as lay-witness testimony.

Lay-witness testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  The ALJ's reasons for rejecting lay-witness testimony must also be "specific." *Stout*, 454 F.3d at 1054.  Nevertheless, an ALJ is not required to address each lay-witness statement or testimony on an

24 - OPINION AND ORDER

"individualized, witness-by-witness basis. Rather if the ALJ
gives germane reasons for rejecting testimony by one witness, the
ALJ need only point to those reasons when rejecting similar
testimony by a different witness." *Molina v. Astrue*, 674 F.3d
1104, 1114 (9th Cir. 2012)(quotation omitted).

        In April 2005 Harrison reviewed Plaintiff's VA medical
records and concluded:

> Given [Plaintiff's] limited/erratic work hx,
> incomplete education, virtually no transferable
> skills, residing in a state where the unemployment
> rate is greater than the national average - when
> combined with his SC conditions - lead me to
> believe this man is not employable with his
> present skill level. He does not possess
> requisite skills/education to pursue
> suitable/gainful employment.

Tr. 647.

        The ALJ gave "little weight" to Harrison's opinion on
the ground that it was based in large part on Plaintiff's self-
reported symptoms, which, as noted, the ALJ found not credible.
The ALJ also noted Harrison's opinion was contradicted by
evidence in the record such as the results of Plaintiff's MRI
scans and his ability to conduct all of his activities of daily
living. Finally, the ALJ noted Plaintiff's ability to work is an
issue reserved to the Commissioner. *See* 20 C.F.R.
§ 404.1527(d)(1).

        On this record the Court concludes the ALJ did not err
when he rejected Harrison's opinion because the ALJ provided

legally sufficient reasons supported by substantial evidence in the record for doing so.

## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.

IT IS SO ORDERED.

DATED this 23rd day of April, 2014.

_____
ANNA J. BROWN
United States District Judge

26 - OPINION AND ORDER